IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL FIRE & MARINE | : | CIVIL ACTION |
| INSURANCE CO., | : | No. 07-270 |
| as subrogee of | : | |
| Brandywine Cira, L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TURNER CONSTRUCTION | : | |
| CO., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          April 2, 2008

        This case arises out of the construction of the Cira
Centre, a skyscraper in Philadelphia, Pennsylvania.  Brandywine
Cira L.P. ("Cira"), the owner of the project, contracted with
Turner Construction Company ("Turner") for Turner to act as
Construction Manager and oversee the project.  Following a mishap
during the project, Cira's insurance provider, St. Paul Fire and
Marine Insurance Company ("St. Paul"), paid Cira over $5 million
for damage caused to the building.  St. Paul, as Cira's subrogee,
now seeks to recover that money from Turner.  Turner, on the
other hand, claims that all rights to subrogation were waived
contractually by Cira.

        St. Paul seeks a declaratory judgment as to the meaning
of the contract between Cira and Turner.  The parties agree on

-1-

the facts of the case and have filed cross-motions for summary judgment.  For the reasons set forth below, Turner's motion for summary judgment will be granted and St. Paul's motion will be denied.

I.   BACKGROUND

    A.   <u>Facts</u>

In November 2003, Turner and Cira entered into the Construction Management Services Agreement (the "Agreement"). Turner agreed to act as Construction Manager and to construct the project in accordance with the requirements of the contract documents.  The Agreement provided that each party would obtain certain insurance protection.  Pursuant to the Agreement, Cira purchased a property insurance policy entitled "Contractor's and Owner's Protection Coverage" (the "Subrogation Agreement") from St. Paul.[1]

During the construction of the Cira Centre, Tracey

---

[1]     Under the Subrogation Agreement, St. Paul became subrogated to Cira's rights under the Agreement with Turner. Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." <u>Black's Law Dictionary</u> (8th ed. 2004).  The Subrogation Agreement provided that any right of recovery held by Cira and any proceeds recovered following a loss covered by the Agreement would belong to St. Paul.  Statement of Undisputed Facts ¶ 27 (doc. no. 15) However, Cira could, without St. Paul's permission, waive its right to recovery as long as the waiver was made before a loss occurred.  <u>Id.</u>

Mechanical, a subcontractor of Turner, installed a flow meter in a pipe on the 28th floor of the Centre.  The meter formed a part of the building's heating, ventilation and air conditioning system.  It controlled the flow of water through the pipe.  On July 10, 2005, the flow meter detached from the pipe in which it had been installed, resulting in a leak that caused substantial damage to the building, which was still under construction.  Following the accident, St. Paul paid to Cira over $5 million in damages.

B.    <u>The Construction Management Services Agreement</u>

The Construction Management Services Agreement (the "Agreement") was entered into by Turner and Cira to govern the construction of the Cira Centre.  Article 13 of the Agreement, entitled "Insurance and Bonding," required both Cira and Turner to purchase insurance policies that met certain criteria set forth in the Agreement.

Section 13.1 required the Construction Manager, i.e., Turner, to purchase certain types of insurance, including workers' compensation and employers' liability insurance, commercial general liability insurance, railroad protective liability insurance, comprehensive automobile liability insurance, and umbrella excess liability protection.  A minimum amount of coverage per occurrence was required by the contract

for each type of insurance, but the contract allowed Turner to

obtain more than the required amount of coverage if it chose to

do so:

> "If the Construction Manager desires to have
> limits in excess of those required by Owner, or
> desires to carry additional coverages for its own
> protection, the arrangements therefor and the
> cost thereof shall be the sole responsibility of
> the Construction Manager."

Agreement § 13.1, Ex. 3, Statement of Undisputed Facts (doc. no.

15-4) [hereinafter, "Agmt."].

In addition, the Agreement provided that "[n]othing

contained in the insurance requirements of this Article 13 is to

be construed as limiting the extent of the Construction Manager's

responsibility for payment of damages resulting from its

operations under [the Agreement]." Id.

Section 13.2 of the Agreement obligated the Owner,

Cira, to "maintain All Risk Builder's Risk Insurance in the name

of the Owner, Construction Manager, Subcontractors and sub-

subcontractors." Id. § 13.2.  The section also set forth

requirements for the Builder's Risk Insurance.

Section 13.2.9, the section at the heart of this

dispute, is entitled "Waivers of Subrogation" and it provides as

follows:

> The Owner and Construction Manager waive all
> rights against (1) each other and any of their
> subcontractors, sub-subcontractors, agents and
> employees, each of the other . . . for damages
> caused by fire or other causes of loss to the
> extent covered by property insurance obtained

-4-

> pursuant to this Paragraph 13.2 or other property
> insurance applicable to the Work, except such
> rights as they have to proceeds of such insurance
> held by the Owner as fiduciary. . . . A waiver of
> subrogation shall be effective as to a person or
> entity even though that person or entity would
> otherwise have a duty of indemnification,
> contractual or otherwise, did not pay the
> insurance premium directly or indirectly, and
> whether or not the person or entity had an
> insurance interest in the property damaged.

Agmt. § 13.2.9.


II.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties have filed cross-motions for summary
judgment, asking the Court to decide the meaning of the contract.
Turner argues that, under Section 13.2.9, Cira waived all rights
to subrogation and that St. Paul is bound by that waiver.  St.
Paul does not dispute Cira's right to bind St. Paul by a waiver
of subrogation.  It argues only that the waiver of subrogation
clause does not prevent St. Paul from seeking compensation from
Turner, but only prevents Turner's insurer from seeking
compensation against any of the other parties involved in the
project.


A.   Summary Judgment Standard

Summary judgment is proper when "the pleadings, the
discovery and disclosure materials on file, and any affidavits,
show that there is no genuine issue as to any material fact and

-5-

that the movant is entitled to judgment as a matter of law."[2]
Fed. R. Civ. P. 56(c).  When confronted with cross-motions for
summary judgment, as in this case, the court considers each
motion separately.  See Coolspring Stone Supply, Inc. v. Am.
States Life Ins. Co., 10 F.3d 144, 150 (3d Cir. 1993) (noting
that concessions made for purposes of one party's summary
judgment motion do not carry over into the court's separate
consideration of opposing party's motion); 10A Charles A. Wright
et al., Federal Practice and Procedure § 2720 (3d ed.).  Although
cross-motions must be considered separately on the merits, a
determination of a common issue of law may be dispositive of both
motions.

B.   Contract Interpretation[3]

The fundamental rule in interpreting the meaning of
a contract is to ascertain and give effect to the
intent of the contracting parties.  The intent of
the parties to a written agreement is to be
regarded as being embodied in the writing itself.
The whole instrument must be taken together in
arriving at contractual intent.  Courts do not
assume that a contract's language was chosen
carelessly, nor do they assume that the parties
were ignorant of the meaning of the language they
employed.

_____

[2]     The parties agree that there are no genuine issues of
material fact in this case and have submitted a joint statement
of undisputed facts.  Therefore, the Court proceeds to consider
the legal issues raised in the case.

[3]     The parties agree that Pennsylvania law governs the
interpretation of the Agreement.

-6-

Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001) (citations omitted).  "[T]erms in one section should not be interpreted to nullify or conflict with other terms.  If one clause appears to conflict with another, the clauses should be construed, if possible, as consistent with one another."  AG Cullen Constr., Inc. v. State Sys. of Higher Educ., 898 A.2d 1145, 1168 (Pa. Commw. Ct. 2006) (citation omitted).

C.   Application

        The Court concludes that the waiver of subrogation in the Agreement bars St. Paul's claim against Turner.  This interpretation of the contract is mandated by the contract language and is the only interpretation that allows the terms of the contract to be construed as consistent with one another.

        1.   Allowing St. Paul's claim would require the Court to rewrite terms of the contract

        Section 13.2.9 of the Agreement provides that "[t]he Owner and Construction Manager waive all rights against (1) each other and any of their Subcontractors, sub-subcontractors, agents and employees, each of the other."  Agmt. § 13.2.9.  The express language of the provision states that each party waived its right to subrogation "against . . . each other."  Id.  Nonetheless, St. Paul suggests that Turner's right to subrogation was waived, but Cira's right was preserved.  Allowing St. Paul to assert a claim

-7-

against Turner would directly contradict the language of the
Agreement; therefore, the Court concludes that St. Paul's claim
has been waived.[4]  Profit Wize Marketing v. Wiest, 812 A.2d 1270,
1274-75 (Pa. Super. 2002) (refusing to "modify the plain meaning
of the words [in a contract] under the guise of interpretation").

> 2.   Holding that St. Paul's claim has been waived
>      avoids contradiction between the terms of the
>      Agreement and is consistent with the structure of
>      the Agreement

St. Paul argues that what it refers to as the
"liability preservation" clause of Section 13.1 preserves
Turner's liability despite the waiver of subrogation provision.
Section 13.1 provides, in relevant part, that "[n]othing
contained in the insurance requirements of this Article 13 is to
be construed as limiting the extent of the Construction Manager's
responsibility for payment of damages resulting from its
operations under this [Agreement]."  Agmt. § 13.1.  If Section
13.1 preserves subrogation claims against Turner, then Section
13.1 and Section 13.2.9 directly contradict one another.  Such a

---

[4]     St. Paul relies heavily on Turner Construction Co. v.
John B. Kelly Co., 442 F. Supp. 551 (E.D. Pa. 1976), to argue
that its right of subrogation has not been waived.  This reliance
is misplaced.  Kelly turned on the interpretation of a contract
between Turner and its insurance company and required a
determination of whether Kelly was an insured under the contract.
Kelly did not involve a contract, like the one in this case, with
an express provision waiving subrogation rights between the
plaintiff and defendant.

contradiction within the terms of a contract must be avoided if the terms can be read as consistent with one another.  AG Cullen Constr., Inc., 898 A.2d at 1168.

A contradiction between the contract terms can be avoided by reading the "liability preservation" clause in the context of Section 13.1.  See Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 560 (Pa. Super. Ct. 2006) (stating that clauses of a contract must be read in context with "consideration of their combined effects") (citing Brown v. Cooke, 707 A.2d 231, 233 (Pa. Super. Ct. 1998)).  The liability preservation clause follows immediately behind language regarding Turner's purchase of insurance in excess of the minimum levels established in the Agreement:

> If the Construction Manager desires to have limits in excess of those required by Owner, or desires to carry additional coverages for its own protection, the arrangements thereof and the cost thereof shall be the sole responsibility of the Construction Manager.

Agmt. § 13.1.

Placing the liability preservation statement immediately after this language suggests that the parties wanted to make clear that Turner would remain responsible for payments in excess of its insurance coverage if it opted not to purchase extra insurance.  In other words, Turner could not rely on the insurance requirements in Section 13.1 to act as caps to its potential liability.

-9-

This interpretation of the liability and subrogation clauses is supported by the structure of the Agreement. Section 13.1 governs Turner's responsibility to purchase insurance. The liability preservation clause is found in Section 13.1, indicating that it relates to Turner's insurance and how Turner's purchase of insurance affects Turner's liability. On the other hand, the waiver of subrogation clause appears in the same section as the discussion of Cira's purchase of All Risk Builder's Risk insurance. Thus, it appears that the waiver relates directly to the Builder's Risk policy, which is the policy under which damages were paid in this case. Placing the waiver of subrogation in the Builder's Risk section makes clear that the parties intended the waiver to apply to payments made under the Builder's Risk section.

The joint statement of undisputed facts states that the money paid to Cira by St. Paul was paid pursuant to an insurance policy obtained pursuant to Section 13.2 of the Agreement. Thus, the parties recognize that Section 13.2 is the most relevant section of the Agreement for purposes of this dispute. If the Court were to find that Sections 13.1 and 13.2 conflict (which it does not find), the Court would still hold that Section 13.2 governs the dispute because the insurance policy in question is governed by Section 13.2. The waiver of subrogation found in Section 13.2 applies because the All Builder's Risk Insurance at

-10-

issue here is governed by Section 13.2.

III. CONCLUSION

      For the aforementioned reasons, Turner's motion for summary judgment will be granted and St. Paul's motion will be denied.  The Court declares that Cira waived all rights to subrogation in the Agreement.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ST. PAUL FIRE & MARINE | : | CIVIL ACTION |
| INSURANCE CO., | : | No. 07-270 |
| as subrogee of | : | |
| Brandywine Cira, L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TURNER CONSTRUCTION | : | |
| CO., | : | |
| | : | |
| Defendant. | : | |

O R D E R

**AND NOW**, this **2nd day of April 2008,** for the reasons
stated in the attached memorandum, it is hereby **ORDERED** that
plaintiff's motion for summary judgment (doc. no. 14) is **DENIED**.
Defendant's cross-motion for summary judgment (doc. no. 16) is
**GRANTED**.


**AND IT IS SO ORDERED.**


S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**